BEN RAMILLER et al., Appellees, v. ANNA RAMILLER, Appellee; FRANCIS WEINRICH, Appellant.

No. 46660.

MAY 8, 1945.

324

Clark, Pryor, Hale & Plock, of Burlington, and Dickinson & Dickinson, of Des Moines, for appellant.

Dailey & Dailey, of Burlington, for plaintiff appellees.

Ben P. Poor, of Burlington, for defendant appellee.

BLISS, J.—The pleadings are of considerable length, but, because of our conclusions and decision, reference to much of them may be omitted. There is no controversy between the plaintiffs and the defendant widow. The petition alleged that Weinrich claimed some right in the land because of his mortgage thereon and promissory note secured by it, both executed by Edward W. Ramiller, deceased, and his wife, the defendant, Emma Ramiller, but it is also alleged that plaintiffs believe the note was paid by decedent, and, if it was not paid, action to recover thereon is barred by the statute of limitations and suit to foreclose the mortgage cannot be maintained because of statutory prohibition. It is alleged in the petition that the several owners are unable to agree upon a division of the land. Defendant Weinrich, in his answer and cross-petition, admitted the respective shares of the heirs and the widow, and their inability to agree upon a partition, but alleged that their ownership was subject to his mortgage. He denied that the note was fully paid, and alleged that on and after March

15, 1938, Edward W. Ramiller had admitted in writing the existence of the said indebtedness, which writings were set out in his pleading. He alleged that, after crediting all payments, there was due him the sum of $29,980 with interest from March 7, 1942. In addition to foreclosure of the mortgage and receivership, Weinrich, in an amendment, prayed that an equitable lien in the above amount be established on the land, superior to the interests of the other parties. Plaintiffs and the defendant widow each filed a reply to Weinrich's answer and an answer to his cross-petition. They denied specifically all of the allegations in Weinrich's pleading, and denied that he was entitled to any of the relief prayed for. They alleged that recovery on the indebtedness was barred by the statute of limitations as provided in section 11007, paragraph 6, of the Code of 1939, and that there was no revivor of the indebtedness as provided in section 11018 of said Code, and that the suit to foreclose the mortgage was barred by section 11028 thereof. The widow alleged that the land was owned by her husband and that she was but an accommodation signer of the note sued upon. She also denied any knowledge of, or that she was a party to or a signer of, any of the alleged letters by which Weinrich alleged the indebtedness was revived. Weinrich was a witness for himself, and also introduced as exhibits the contract by which he sold the farm to Ramiller, with the payments endorsed thereon, the deed, the note and mortgage, the assignment of the mortgage to him by the original mortgagee, an extension of the maturity of the note, and certain letters of the deceased. The court overruled motions of Weinrich to strike certain portions of the answers to his cross-petition.

The following facts are shown by the record and are not in dispute: Plaintiffs' petition was filed September 30, 1943, and Weinrich's cross-petition was filed November 6, 1943; Edward W. Ramiller died September 12, 1942; on March 1, 1911, by written contract, Weinrich sold the land involved to the decedent for $20,000, and Anna Ramiller signed the contract; subsequently $2,000 was paid on the purchase price, and also the accruing interest; on March 1, 1923, the decedent borrowed $18,000 from the Iowa State Savings Bank of Burlington and

paid Weinrich the amount due on his contract; on the same date decedent and his wife, Anna Ramiller, executed their note for $18,000, payable on March 1, 1928, to said bank or its order, bearing semiannual interest at six per cent, and eight per cent after maturity; Weinrich executed a deed to the farm to Edward W. Ramiller at this time; on the same date Ramiller and wife executed a mortgage on the land to the bank securing the $18,000 note; the mortgage shows the amount of the note; the mortgage was filed for record and recorded in the office of the recorder of Des. Moines county on March 3, 1923; on May 31, 1923, the said bank endorsed without recourse the note, and assigned the mortgage to Weinrich; this assignment was never placed of record; on March 12, 1928, the said bank and Ramiller and his wife executed an agreement extending the maturity of the note for five years after March 1, 1928; this extension agreement was never placed of record; Weinrich pleaded in an amendment to his cross-petition that the bank executed the extension agreement as his agent; he also pleaded that he was the owner of the note at said time; Weinrich testified that: "Mr. Ramiller didn't know I had this mortgage for several years. He always paid in the bank $1,080, deposited it there and they would give him a receipt for the interest on the note. They would give my bank account credit for the interest payment. * * * The bank failed about the 2d of February, 1932"; an administrator of the decedent's estate was appointed September 17, 1942, and at once posted notices of his appointment; no claim for this indebtedness was ever filed against the estate; the only extension agreement made so far as the record in the case shows was the one above referred to; no agreement extending the maturity of the mortgage debt was ever recorded in the office where the mortgage was recorded, and there was never any entry on the margin of the record of the mortgage of any extension of the maturity of the debt secured by it or any part of it.

Just how the appellant computed the amount alleged to be due on the note does not definitely appear. Neither are the payments nor the dates thereof shown. The widow contends that more than ten years had elapsed from March 1, 1933—the

maturity fixed by the extension agreement—when the cross-action was brought. She also urges that the alleged revivor writings of her husband were inadmissible under section 11257, Code of 1939, the "dead man" statute, and also that the writings were not signed by her and are not shown to refer to the indebtedness sued upon. Weinrich testified that Ramiller owed him no other indebtedness. Objection was made that he was an incompetent witness under Code section 11257, supra.

I. It is our conclusion that the decisive factor on the issue of foreclosure is section 11028 of the 1939 Code, which provides that: "No action shall be maintained to foreclose or enforce any real estate mortgage, bond for deed, trust deed, or contract for the sale or conveyance of real estate, after twenty years from the date thereof, as shown by the record of such instrument," unless such record "shows that less than ten years have elapsed since the date of maturity of the indebtedness or part thereof, secured thereby, or since the right of action has accrued thereon, or unless the record shows an extension of the maturity of the instrument or of the debt or a part thereof, and that ten years from the expiration of the time of such extension have not yet expired * * *." The mortgage which appellant cross-petitioned to foreclose and enforce, as shown by its record, bears the date of March 1, 1923, and the cross-petition was filed November 6, 1943, and no notice of its filing was ever served on any appellee or placed in the hands of the sheriff for service. More than twenty years from the date of the mortgage, as shown by its record, had elapsed before appellant's action was begun, and no exception or condition noted in the section which might have saved the right to foreclose is shown by the record of the mortgage. There is no showing in the record of the mortgage that less than ten years had elapsed from the maturity of the promissory note secured or from any extension of its maturity. It is not sufficient, under the provisions of this section, to establish by evidence *other than the record of the mortgage* the fact that less than ten years had elapsed since the maturity of the debt. The statute requires that such fact must be shown *by the record of the mortgage*. Section 11028 also provides that any extension must be shown by "filing an extension agreement, duly ac-

knowledged as the original instrument was required to be acknowledged, in the office of the recorder where the instrument is recorded, or by noting on the margin of the record of such instrument in the recorder's office an extension of the maturity of the instrument or of the debt secured, or any part thereof; each notation to be witnessed by the recorder and entered upon the index of mortgages in the name of the mortgagor and mortgagee.'' No such evidence of any extension was placed on record in the recorder's office, and there is no showing in the record in the case that any such extension agreements existed. It is made clear by section 11028 that any alleged admissions of the existence of the debt in any writings of Edward W. Ramiller do not comply with the exceptions and conditions required by the section, and do not entitle the appellant to foreclose the mortgage against any part of the land.

Section 11028, Code of 1939, was enacted as: ''Sec. 2. Foreclosure of certain mortgages,'' of chapter 152 of the Laws of the Thirty-first General Assembly, approved March 23, 1906, and appeared as section 3447-c of the 1907 Supplement to the Code of 1897. It was repealed by chapter 161 of the Laws of the Thirty-fourth General Assembly, approved April 11, 1911 (section 3447-c, 1913 Supplement), and redrafted into the form in which it has appeared in all subsequent Codes. While it is in the chapter of the Code entitled ''Limitations of Actions,'' it is in the division thereof entitled ''Special Limitations,'' and has been so placed in prior Codes. This court has uniformly referred to this statute and similar ones as ''special statutes of limitation.'' American Baptist Home Mission Soc. v. First Baptist Church, 163 Iowa 609, 613, 145 N. W. 288; Newgirg v. Black, 174 Iowa 636, 643, 644, 645, 156 N. W. 708; Lackey v. Melcher, 225 Iowa 698, 703, 281 N. W. 225; Monast v. Manley, 228 Iowa 641, 643, 293 N. W. 12; Johnson County v. O'Connor, 231 Iowa 1333, 1336, 4 N. W. 2d 419; Newton v. Knox, 234 Iowa 1095, 1106, 13 N. W. 2d 795, 800.

As said in Newgirg v. Black, supra, 174 Iowa 636, 644, 156 N. W. 708, 710:

''Chapter 152 of the Acts of the Thirty-first General

Assembly was not made as an amendment to the general statute of limitations * * *."

In that case a suit in equity was brought to quiet title to real estate, and particularly against a certain mortgage, foreclosure of which, as shown by its record, was barred by section 3447-c, 1913 Supplement (section 11028, Code of 1939). Defendant alleged as a defense that the mortgagor's residence out of the state had tolled the statute of limitations (section 3451, Code, 1897). A demurrer to the answer was sustained because the nonresidence was not an exception to the prohibition of section 3447-c, stated therein. The court said:

"Section 3447-c is a specific statute of limitations in regard to foreclosure of real estate mortgages which, as amended, was enacted 16 years after the enactment of Section 3451. The legislature certainly had some object in passing the act now known as Section 3447-c. If this be true, what object did it have, and what could it apply to if it was intended that the limitation therein provided was subject to the general exceptions in favor of minors and insane persons under Section 3453, Code, 1897, and against nonresidents under Section 3451 of the Code?"

In Lackey v. Melcher, supra, 225 Iowa 698, 703, 281 N. W. 225, it was held that section 11028, being a "special limitation" was not subject to the exceptions contained in section 11018 (Code, 1935), but was subject only to the exceptions contained in section 11028 itself. There was a like holding in Hootman v. Beatty, 228 Iowa 591, 595, 596, 293 N. W. 32, 34, where it was contended that section 11028 did not apply because of an alleged new admission of the debt. The court said:

"Section 11028 prescribes the limitation on foreclosure of 'ancient mortgages' and provides the exceptions. * * * There being no extension of record of the maturity of the debt, and more than 10 years having elapsed since the date of maturity, the action is barred by section 11028."

In Newton v. Knox, supra, 234 Iowa 1095, 1107, 13 N. W. 2d 795, 800, 801, it was held that the fact that the maker of the note and mortgage was executor of the estate. of the de-

ceased payee and mortgagee, which fact suspended the running of the statute of limitations on the paper during his executorship, did not lift the ban of section 11028 against foreclosure of the mortgage, and that certain admissions of the debt under section 11018 were not within the exceptions of section 11028.

Section 11028 and its corresponding predecessors were enacted to clarify titles to real estate by nullifying apparent liens and clouds of record upon titles and to defeat the prosecution of stale claims. In Newgirg v. Black, supra, 174 Iowa 636, 643, 647, 156 N. W. 708, 710, the court said:

"As stated, a mortgage is but an incident of a debt, and, as long as the debt survives, the remedy of foreclosure of a mortgage survives with it; at least such was the rule prior to the changes in the statute by the 31st, 34th and 35th general assemblies. The result of this rule has been that a multiplicity of actions to quiet title has been necessary, and has caused trouble and expense to real estate owners, who, in attempting to transfer real estate, found that, many years before, some mortgage had been given and now appeared of record as encumbering their property because it had not been released of record. * * * Doubtless the legislature had in mind to remedy this situation .in the passage of the acts above referred to. * * * The statute in question was evidently designed *to make the record show* to all whether or not any given mortgage was valid and enforcible." (Italics ours.)

See, also, Monast v. Manley, supra, 228 Iowa 641, 644, 293 N. W. 12, and Newton v. Knox, supra, 234 Iowa 1095, 13 N. W. 2d 795, 800.

It is our conclusion that under the provisions of section 11028 and this court's application thereof, as noted herein, the foreclosure of appellant's mortgage against any of the land and against any of the appellees cannot be maintained, and that any admissions of the existence of the debt in the letters of Edward W. Ramiller are not within the exceptions or conditions stated in the section and do not avoid the prohibition of the statute.

II. Did these letters allegedly reviving the debt as to Edward W. Ramiller revive the debt and extend its maturity

as to the appellee Anna Ramiller so as to make her liable to a personal judgment on the note? There is no specific prayer for judgment on the note against anybody. The prayer, with respect to the note, is: "this defendant prays for judgment in the sum of $29,980.00 with interest from March 7, 1942 as in said note provided." The plaintiff appellees are not liable for the payment of the note and no personal judgment for the amount due thereon could be rendered against them. Anna Ramiller signed the note. She alleged in her answer to the cross-petition that she signed as an accommodation maker, and that the note was for a loan to her husband and not to her, and that the appellant had full knowledge of these facts when he purchased the note and mortgage. Appellant filed no reply to the answer denying these allegations. Under Rule 102 of the Rules of Civil Procedure these pleaded facts must be deemed admitted.

Furthermore, there is no claim by appellant that Anna Ramiller signed any of the alleged writings of her husband admitting the debt, and they show that she did not sign them. Under Code section 11018 the writing reviving the debt or admitting that it is unpaid must be "signed by the party to be charged." Since there was no revivor by Anna Ramiller and more than ten years had elapsed since the maturity of the extension agreement and the commencement of appellant's action, the action to recover judgment on the note against the appellee Anna Ramiller was barred under section 11007(6), Code, 1939.

III. Appellant also prayed the amount which he claimed was owing on the note be established as an "equitable lien" upon the land superior to the rights therein of the appellees. His theory is that since appellees were seeking equity they must do equity, and since the debt was unpaid it would be inequitable and against conscience to grant them affirmative relief by quieting title to the land as against his mortgage. In the Newgirg case, supra, 174 Iowa 636, 156 N. W. 708, plaintiff's demurrer to defendants' answer admitted that the mortgage debt was unpaid, yet the demurrer was sustained and the relief prayed by plaintiff was granted. There is also a maxim, in substance stating that equity aids the vigilant and not those

who slumber on their rights. The new Rules of Civil Procedure require that a petition in a partition action shall name all owners and lienholders and state the nature and extent of each interest or lien. Rule 271. Also, any party may perfect or quiet title to the property and adjudicate the rights of lienholders. Rules 275, 279.

Appellant's mortgage, as shown upon the public record thereof, was unenforceable, and no adjudication was necessary to establish that fact, and yet we know of no good reason why appellees were not entitled to such adjudication, while testimony was available, against any future attempt to enforce the mortgage. Certainly appellant was not further hurt thereby.

The rights and remedies of appellees are based upon statutes and rules of procedure, which do not run counter to any maxims of equity or principles of common law. We find no merit in this contention.

The decree appealed from is affirmed.—Affirmed.

OLIVER, MILLER, WENNERSTRUM, GARFIELD, SMITH, MANTZ, and MULRONEY, JJ., concur.

HALE, C. J., takes no part.